Tobias S. Keller (SBN 151445)
tkeller@kbkllp.com
Thomas B. Rupp (SBN 278041)
trupp@kbkllp.com
KELLER BENVENUTTI KIM LLP
650 California Street, Suite 1900
San Francisco, California 94108
Telephone: (415) 496-6723
Facsimile: (650) 636-9251

Mark McKane (SBN 230552)
mmckane@kirkland.com
Michael P. Esser (SBN 268634)
michael.esser@kirkland.com
KIRKLAND & ELLIS LLP
555 California Street, 27th Floor
San Francisco, CA 94104
Telephone: (415) 439-1400
Facsimile: (415) 439-1500

David Zott (pro hac vice)
dzott@kirkland.com
Daniel Laytin (pro hac vice)
dlaytin@kirkland.com
Zachary Holmstead (pro hac vice)
zachary.holmstead@kirkland.com
KIRKLAND & ELLIS LLP
300 North LaSalle Street
Chicago, IL 60654
Telephone: (312) 862-2000
Facsimile: (312) 862-2200

*Attorneys for Defendant*
*Blue Cross Blue Shield Association*

# UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF CALIFORNIA
### OAKLAND DIVISION

| | |
|---|---|
| VHS LIQUIDATING TRUST, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>BLUE CROSS OF CALIFORNIA, *et al.*,<br><br>Defendants. | **Adv. Proc. No.** 21-04034<br><br>The Hon. Judge Charles Novack<br><br>**DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION TO REMAND**<br><br>Date: November 12, 2021<br>Time: 11:00 a.m.<br>Dept.: 215 (Tele/Videoconference Appearances Only) |

# **TABLE OF CONTENTS**

**Page**

I.     INTRODUCTION ................................................................................................. 1

II.    BACKGROUND ................................................................................................... 3

III.   ARGUMENT ........................................................................................................ 5

     A.    The Court Should Defer Ruling on Plaintiffs' Remand Motion Until the JPML Rules on Transfer. .......................................................................... 5

     B.    If the Court Reaches Plaintiffs' Remand Motion, the Court Should Deny Remand Because the Court Has Subject Matter Jurisdiction Over this Action. ........................................................................................................ 6

     C.    The Discretionary Remand Factors Weigh Strongly Against Remand Here. .................................................................................................................. 11

IV.    CONCLUSION .................................................................................................... 19

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Bally Total Fitness Corp. v. Contra Costa Retail Ctr.*,
    384 B.R. 566 (Bankr. N.D. Cal. Feb. 20, 2008) .......................................................................13

*Brown v. Gore*,
    2012 WL 6609005 (N.D. Ala. Dec. 13, 2012)..............................................................................7

*Cerven v. Blue Cross Blue Shield of N.C.*,
    No. 5:12-cv-17, Dkt. 1 (W.D.N.C.) ............................................................................................4

*Cobalt Partners, LP v. SunEdison, Inc.*,
    2016 WL 4488181 (N.D. Cal. Aug. 26, 2016) ..........................................................................12

*Davis v. Pfizer, Inc.*,
    2014 WL 1599005 (N.D. Cal. Apr. 21, 2014) .............................................................................5

*Dudley v. Buffalo Rock Co.*,
    2021 WL 1164380 (N.D. Ala. Mar. 26, 2021) ............................................................................7

*In re Achugbue*,
    2020 WL 1845028 (Bankr. D. Or. April 10, 2020) ...........................................14, 15, 16, 17

*In re Adelphia Commc'ns Corp.*,
    2005 WL 1026559 (S.D.N.Y. May 2, 2005) .........................................................................2, 5

*In re AmericanWest Bancorporation*,
    2011 WL 6013779 (Bankr. E.D. Wash. Dec. 2, 2011)................................................7, 12, 15

*In re Blue Cross Blue Shield Antitrust Litigation*,
    Multidistrict Litigation No. 2406, 13-cv-20000 (N.D. Ala.) ......................................................1

*In re Cedar Funding, Inc.*,
    419 B.R. 807 (B.A.P. 9th Cir. 2009).........................................................................................15

*In re Consol. Meridian Funds*,
    511 B.R. 140 (W.D. Wash. 2014).............................................................................8, 9, 10, 11

*In re Cytodyn of New Mexico, Inc.*,
    374 B.R. 733 (Bankr. C.D. Cal. 2007).....................................................................................17

*In re Enron Corp. Sec., Derivative & ERISA Litig.*,
    2002 WL 32107216 (S.D. Tex. Aug. 12, 2002) .......................................................................13

*In re Etheridge*,
    2006 WL 4528540 (Bankr. D. Or. July 21, 2006) ...................................................................15

*In re Mortgages Ltd.*,
   452 B.R. 776 (Bankr. D. Ariz. 2011)..............................................................................12, 13

*In re Neel*,
   554 B.R. 241 (Bankr. Or. 2016).................................................................................18

*In re Pegasus Gold Corp.*,
   394 F.3d 1189 (9th Cir. 2005) ............................................................................7, 8, 10

*In re Residential Cap. LLC*,
   519 B.R. 593 (S.D.N.Y. 2014)....................................................................................8

*In re Resorts Int'l, Inc. v. Price Waterhouse & Co., LLP*,
   372 F.3d 154 (3d Cir. 2004)......................................................................................9

*In re Sequoia Vill., LLC*,
   2012 WL 478926 (Bankr. D. Or. Feb. 14, 2012).................................................18

*In re Valley Health Sys.*,
   584 F. App'x 477 (9th Cir. 2014) ...........................................................................11

*In re Verity Health Sys. of Cal., Inc.*,
   No. 2:18-bk-20151(Bankr. C.D. Cal. Aug. 14, 2020) ......................................1, 3, 4

*In re Wilshire Courtyard*,
   459 B.R. 416 (B.A.P. 9th Cir. 2011)......................................................................10

*In re Wilshire Courtyard*,
   729 F.3d 1279 (9th Cir. 2013) ...................................................................... *passim*

*In re WorldCom, Inc. Sec. Litig.*,
   293 B.R. 308 (S.D.N.Y. 2003)..................................................................................7

*Jones v. Bristol-Myers Squibb Co.*,
   2013 WL 3388659 (N.D. Cal. July 8, 2013)....................................................2, 5, 6

*Laird v. Gianulias*,
   2013 WL 4851620, at *5 (N.D. Cal. Aug. 12, 2013)..............................................10

*Lexecon Inc. v. Milberg Weiss Bershad Hynes & Lerach*,
   523 U.S. 26 (1998)..................................................................................................15

*McKinstry v. Sergent*,
   442 B.R. 567 (E.D. Ky. 2011) ..............................................................................8, 9

*Sanborn v. Asbestos Corp.*,
   2009 WL 195922 (N.D. Cal. Jan. 27, 2009)................................................2, 5, 6, 18

*Sec. Farms v. Int'l Bhd. of Teamsters*,
   124 F.3d 999 (9th Cir. 1997) .................................................................................12

*Sheridan v. Blue Cross of California*,
No. 13-cv-990, Dkt. 1 (N.D. Ala. Apr. 29, 2013) ............................................................. 14, 16

*Sinochem Int'l Co. Ltd. v. Malaysia Int'l Shipping Corp.*,
539 U.S. 422 (2007) ............................................................................................................ 2, 6

*Sobera v. DePuy Orthopaedics, Inc.*,
2014 WL 1653077 (N.D. Cal. Apr. 24, 2014) ............................................................................ 5

*Stichting Pensioenfonds ABP v. Countrywide Fin. Corp.*,
447 B.R. 302 ............................................................................................................................ 18

*Sun Microsystems Inc. v. Hynix Semiconductor Inc.*,
534 F. Supp. 2d 1101 (N.D. Cal. 2007) .................................................................................. 11

*Thayer v. Wells Fargo Bank, N.A.*,
92 Cal. App. 4th 819 (2001) .................................................................................................... 14

*Tobler v. DePuy Orthopaedics, Inc.*,
2012 WL 3598291 (D. Nev. Aug. 17, 2012) .............................................................................. 6

*Trustees of Masonic Hall & Asylum Fund v. Pricewaterhousecoopers LLP*,
2009 WL 290543 (S.D.N.Y. Feb. 6, 2009) .................................................................. 12, 14, 18

*Waitt v. Merck & Co.*,
2005 WL 1799740 (W.D. Wash. July 27, 2005) ........................................................................ 6

**Statutes**

28 U.S.C. § 1334 .............................................................................................................. *passim*

28 U.S.C. § 1407 ........................................................................................................................ 5

**Rules**

Cal. Rules of Court 3.400 ........................................................................................................ 14

J.P.M.L. Rule 1.1(h) ................................................................................................................... 4

J.P.M.L. Rule 7.1(a) ................................................................................................................... 4

**Other Authorities**

8A C.J.S. Bankruptcy § 394 (2021) ........................................................................................ 12

## I. INTRODUCTION

Plaintiffs' antitrust lawsuit (this "Action"), originally filed in California state court, alleges that the Blue Cross Blue Shield Association ("BCBSA") and member Blue Cross and Blue Shield Plans (the "Blue Plans") entered into market allocation agreements to reduce competition and engaged in price fixing and boycotting. Dkt. 1-2, First Am. Compl. ("Compl." or "Complaint"). The Complaint ***directly alleges that the challenged conduct caused Verity to go into bankruptcy***, resulting in the creation of Plaintiff VHS Liquidating Trust. Dkt. 1-2, Compl. ¶¶ 21, 22. Now that the case has been removed to federal court, Plaintiffs reverse course, asserting that this Action is so unrelated to the bankruptcy case that there is no federal subject matter jurisdiction over it.

Plaintiffs' new position is directly contrary to this case's procedural history, as well as the law. The bankruptcy plan was confirmed by this Court's sister court in August 2020. *In re Verity Health Sys. of Cal., Inc*., No. 2:18-bk-20151, Dkt. 5504 (Bankr. C.D. Cal. Aug. 14, 2020) ("*In re Verity*") (the "Plan"). The bankruptcy proceedings are ongoing, with more than 70 docket entries in the past two months alone. VHS Liquidating Trust brought this Action in direct implementation and execution of the Plan, which calls for the transfer of causes of action and other assets into the Liquidating Trust— and explicitly includes claims against health plans such as those asserted in this Action against the Blue Plans. Dkt. 1-1, Plan §§ 6.5(b)(vi), 13.9(a)(ix). The Plan further provides for prosecution of this Action and disbursement of any proceeds to trust beneficiaries in accordance with Plan requirements. *Id*. §§ 1.75, 1.76, 1, 1.97, 1.115. Given the close nexus between this Action and the bankruptcy case, Defendants removed this Action pursuant to 28 U.S.C. § 1334, which gives this Court "jurisdiction of all civil proceedings . . . related to cases under title 11."

After removal, Defendants filed a notice to transfer this Action to an existing multidistrict litigation pending in the Northern District of Alabama because this Action, in addition to being related to the bankruptcy case, is also a copycat case. Dkt. 43-1, Notice of Potential Tag-Along Action. Plaintiffs' factual allegations are identical to those in dozens of class action lawsuits already transferred to and consolidated in *In re Blue Cross Blue Shield Antitrust Litigation*, Multidistrict Litigation No. 2406, 13-cv-20000 (N.D. Ala.) (the "MDL" or the "Blue MDL"). *See* Ex. A, Table of

Selected Copycat Allegations.  Given the identical allegations between this Action and the MDL, and the significant efficiencies gained from coordinated pretrial proceedings, transfer of this Action is warranted just as it has been for the dozens of other copycat cases already transferred.  Accordingly, on September 29, 2021, the Judicial Panel on Multidistrict Litigation (the "JPML") issued a Conditional Transfer Order (the "CTO").

On September 30, to avoid duplication and judicial waste inherent in multiple courts considering the same issues, BCBSA then filed a motion to stay this Action pending the JPML's final transfer decision.  *See* Dkt. 75 (the "Motion to Stay" or the "Stay Motion").  The next day, Plaintiffs filed a motion to remand this Action to state court.  *See* Dkt. 83-1 ("Motion to Remand" or "Remand Motion").

***First***, the Court should grant BCBSA's Stay Motion, deferring the remand question for the MDL Court.  Plaintiffs ignore the Stay Motion, except to suggest the Court must decide the jurisdictional remand issue first.  But this is wrong.  A court may properly decide a motion to stay prior to deciding a remand motion because "[j]urisdiction is vital only if the court proposes to issue a judgment on the merits."  *Sinochem Int'l Co. Ltd. v. Malaysia Int'l Shipping Corp.*, 539 U.S. 422, 431 (2007).  Courts routinely grant stays and defer on remand motions while a transfer motion is pending with the JPML for the sake of "uniformity, consistency, and predictability."  *E.g.*, *Jones v. Bristol-Myers Squibb Co.*, 2013 WL 3388659, at *2 (N.D. Cal. July 8, 2013)*.  Otherwise, the parties and the Court risk wasting time and resources litigating jurisdictional issues, which may have to be addressed again by the MDL court if the JPML grants transfer.  *See*, *e.g.*, *In re Adelphia Commc'ns Corp.*, 2005 WL 1026559 (S.D.N.Y. May 2, 2005).  Moreover, a transfer by the JPML will "further judicial economy and . . . eliminate the potential for conflicting pretrial rulings"—the risk inherent when multiple actions with duplicative allegations are pending in different courts.  *Sanborn v. Asbestos Corp.*, 2009 WL 195922, at *2 (N.D. Cal. Jan. 27, 2009).

***Second***, even if the Court considers Plaintiffs' Remand Motion, that motion fails because the Court has well-established subject matter jurisdiction over this Action as "related to" Plaintiffs' bankruptcy case.  28 U.S.C. § 1334.  Under the "close nexus" test adopted by the Ninth Circuit, subject matter jurisdiction exists for "matters affecting the . . . implementation" of the confirmed bankruptcy

plan, as well as for "matters affecting the interpretation" of the plan. *In re Wilshire Courtyard*, 729 F.3d 1279, 1287 (9th Cir. 2013) (internal quotations marks omitted). Here, the "close nexus" test is easily met under either the implementation or interpretation prong. On the implementation prong, the Plan directs Plaintiff VHS Liquidating Trust to pursue claims—explicitly including claims against health plans like those asserted here—to maximize the value of the Liquidating Trust and distribute proceeds to trust beneficiaries. VHS Liquidating Trust brought the instant Action in execution of that Plan directive, and will prosecute this Action and disburse any proceeds according to the Plan. As for the interpretation prong, issues of standing, statutes of limitations, and damages in this Action will all depend on interpretation of the Plan.

*Third*, the Court should decline to grant a "discretionary" remand. Attempting to skew the discretionary remand factors in their favor, Plaintiffs omit relevant factors and misstate the contours and purpose of the factors they do consider. When all relevant factors are correctly considered, they overwhelmingly support denial of remand here.

In sum, this Court should defer ruling on Plaintiffs' Remand Motion and instead grant BCBSA's Stay Motion given the *identical* overlap between this Action and the MDL. If the JPML vacates its conditional transfer while this motion is pending (or this Court otherwise considers the Remand Motion), the Court should deny Plaintiffs' Motion to Remand.

## II.    BACKGROUND

On August 31, 2018, Verity Health System filed a petition for voluntary Chapter 11 bankruptcy in the Central District of California Bankruptcy Court. *In re Verity*, Dkt. 1. According to the Complaint, Verity "went bankrupt and closed due to the conduct at issue" in this Action. Compl. ¶ 22; *id.* at ¶ 21 ("Defendants' conduct was a substantial factor in causing that bankruptcy."). Verity's CEO Richard G. Adcock explained that Verity's "fiscal crisis" was caused in part by the fact that "Verity [was] paid below market rates through its payor contracts with health plans," including specifically "BlueCross" and "BlueShield," making it difficult to "break even." *In re Verity*, Dkt. 8 at 25–26. Two years later, the Bankruptcy Court confirmed Verity's liquidation plan. *Id.*, Dkt. 5504. Plaintiff VHS Liquidating Trust "is the bankruptcy liquidator for Verity," created as part of the Verity bankruptcy

Plan. Compl. ¶ 110. The Plan explicitly preserved and vested in the liquidating trust the right to bring actions "arising from claims against health plans." *In re Verity*, Dkt. 5466 at 65.

On July 27, 2021, Plaintiffs filed one such action against BCBSA and all 35 Blue Plans. They amended their Complaint a day later on July 28, 2021. Dkt. 1–2. The Complaint is a copycat complaint, alleging antitrust violations based on BCBSA's longstanding practice of licensing the exclusive right to use the Blue Cross and Blue Shield trademarks ("Blue Marks" or "Marks") in a specified service area. The first of many such complaints was filed in February 2012 by a group of plaintiffs that sued BCBSA and Blue Cross & Blue Shield of North Carolina. *Cerven v. Blue Cross Blue Shield of N.C.*, No. 5:12-cv-17, Dkt. 1 (W.D.N.C.). *Cerven* triggered an onslaught of copycat class actions. Since December 2012, dozens of cases have been consolidated in the MDL for pretrial proceedings in the Northern District of Alabama in front of Judge R. David Proctor. This Complaint is no different, and contains entire sections and paragraphs that are verbatim or nearly verbatim to those in the MDL. *See* Ex. A; *see also* Stay Motion at 8–12. Plaintiffs challenge the same aspects of the Blue System, and seek the same relief as plaintiffs in the MDL. *Id.*

On September 22, 2021, Defendants removed this Action to this Court pursuant to 28 U.S.C. § 1334(b) based on this Court's "related to" jurisdiction. Thereafter, Defendants filed a notice of potential tag-along action under JPML Rule 7.1(a), identifying this Action as a "civil action pending in a district court which involves common questions of fact with . . . actions previously transferred to an existing MDL." JPML Rule 1.1(h); Dkt. 43-1, Notice of Potential Tag-Along Action. The Panel conditionally ordered transfer a week later on September 29.[1] On September 30, BCBSA moved this Court to stay this Action pending a final ruling on transfer by the JPML. On October 1, Plaintiffs filed a motion to remand this Action to state court.

---

[1] Plaintiffs filed an objection to the CTO before the JPML on October 6, 2021. Briefing will be complete on the transfer issue by November 18, 2021. Oral argument, if the JPML orders it, will be heard on December 2, 2021.

# III.    ARGUMENT

## A.    The Court Should Defer Ruling on Plaintiffs' Remand Motion Until the JPML Rules on Transfer.

BCBSA filed its Stay Motion to allow the JPML to issue a final decision on Defendants' pending 28 U.S.C. § 1407 motion to transfer this Action to the MDL.  A stay will avoid the type of waste and duplication that Plaintiffs have now created with their Remand Motion.    Under 28 U.S.C. § 1407, the JPML is authorized to transfer "civil actions involving one or more common questions of fact [which] are pending in different districts . . . to any district for coordinated or consolidated pretrial proceedings."  28 U.S.C. § 1407(a).  MDLs exist "to further judicial economy and to eliminate the potential for conflicting pretrial rulings"—the risk inherent when multiple actions with duplicative allegations are pending in different courts.  *Sanborn*, 2009 WL 195922, at *2.  In the context of the Blue MDL, the JPML has issued decisions transferring 66 actions to the MDL before Judge Proctor.  Dkt. 75-2 at 2 ("Conditional Transfer Order").  Those actions have allegations identical or nearly identical to those in this Action.  The JPML transferred those actions to the MDL so that one judge will rule on the overlapping issues, ensuring efficiency and consistency.

Courts routinely defer to the MDL court for resolution of remand motions.  "[D]eference to the MDL court for resolution of a motion to remand often provides the opportunity for uniformity, consistency, and predictability that underlies the MDL system."  *Jones*, 2013 WL 3388659, at *2 (internal quotation marks omitted); s*ee also Sobera v. DePuy Orthopaedics, Inc.*, 2014 WL 1653077, at *2 (N.D. Cal. Apr. 24, 2014) (granting stay in the interest of judicial economy and deferring to MDL court to resolve remand motion).

Without a stay, the parties and the Court here risk duplicative and wasteful jurisdictional litigation, which would then be repeated if the JPML grants transfer.  For example, in *In re Adelphia*, 2005 WL 1026559, at *1, *8, the parties litigated "related to" jurisdiction in two fora before the transferee MDL district court (reviewing the bankruptcy court order in an appellate capacity) ultimately reversed the bankruptcy court's order and denied remand.

If the Court stays this Action before deciding remand and the "case is transferred to [the] MDL, the MDL judge can address the jurisdictional issues in a uniform manner."  *Davis v. Pfizer, Inc.*,

2014 WL 1599005, at *1 (N.D. Cal. Apr. 21, 2014). If the JPML denies transfer, this Court can simply "restore" the Motion to Remand for decision. *Sanborn*, 2009 WL 195922, at *2. Judicial economy is promoted in either scenario.

In their Remand Motion, Plaintiffs barely acknowledge the pending Stay Motion, suggesting only that "[t]his Court should rule on subject matter jurisdiction now, because it supersedes the other procedural questions." Mtn. to Remand at 10. That is wrong. "The Court may properly decide [the] motion to stay prior to deciding the motion to remand because '[j]urisdiction is vital only if the court proposes to issue a judgment on the merits.'" *Tobler v. DePuy Orthopaedics, Inc.*, 2012 WL 3598291, at *2 (D. Nev. Aug. 17, 2012) (quoting *Sinochem*, 549 U.S. at 431). Courts routinely "grant[] motions to stay in order to preserve judicial resources, even where jurisdictional questions and motions to remand are at issue." *Jones*, 2013 WL 3388659, at *2; *see also* Dkt. 75-1 at 13–15 (collecting cases).

Plaintiffs cite *Waitt v. Merck* to support their contention that this Court should rule on Plaintiffs' Remand Motion now. *See* Mtn. to Remand at 10 (citing *Waitt v. Merck & Co.*, 2005 WL 1799740 (W.D. Wash. July 27, 2005)). But in *Waitt*, the would-be-transferor district court declined to stay the case pending the JPML's transfer decision to an MDL because it was clear that plaintiffs' complaint was factually distinct from the issues before the MDL. The district court correctly reasoned, however, that "if plaintiff's complaint contained allegations" that *were* similar to those in the MDL, "the Court would likely *stay the present proceedings pending a transfer decision* by the JPML." *Id*. at *3 (emphasis added). Here, in light of the copycat allegations that Plaintiffs have made, this Court should grant the Stay Motion and defer ruling on Plaintiffs' Motion to Remand.

**B.** **If the Court Reaches Plaintiffs' Remand Motion, the Court Should Deny Remand Because the Court Has Subject Matter Jurisdiction Over this Action.**

Although the Court can stay this Action without deciding jurisdiction, subject matter jurisdiction is nonetheless proper under 28 U.S.C. § 1334: "district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or ***related to*** cases under title 11." *Id*. (emphasis added). "A bankruptcy court's 'related to' jurisdiction is very broad, including nearly every matter directly or indirectly related to the bankruptcy." *In re Wilshire Courtyard*, 729 F.3d at 1287 (citation omitted).

The Ninth Circuit has adopted a "close nexus" test to determine whether a post-confirmation action is "related to" a bankruptcy proceeding. *Id.* Under this test, subject matter jurisdiction exists for "matters affecting the interpretation, implementation, consummation, execution, or administration of the confirmed [bankruptcy] plan." *Id.* (internal quotation marks omitted). The "close nexus" test "requires particularized consideration of the facts and posture of each case, as the test contemplates a broad set of sufficient conditions and retains a certain flexibility." *Id.* at 1289 (internal quotation marks omitted). This flexibility "can be especially important in cases with continuing trusts," as these matters "by their nature maintain a connection to the bankruptcy even after the plan has been confirmed." *In re Pegasus Gold Corp.*, 394 F.3d 1189, 1194 (9th Cir. 2005).

"Related to" jurisdiction and the "close nexus" test is a recognition that "[i]t is the function of the federal courts," rather than state courts, "to interpret, implement, and enforce bankruptcy orders." *In re AmericanWest Bancorporation*, 2011 WL 6013779, at *5 (Bankr. E.D. Wash. Dec. 2, 2011). This is true here both for this Court as well as the MDL Court. "Analysis of bankruptcy law and procedures is better performed by federal courts than state courts." *Id.*; *see, e.g.*, *In re WorldCom, Inc. Sec. Litig.*, 293 B.R. 308, 333 (S.D.N.Y. 2003) (MDL court exercising "related to" jurisdiction and noting "it is beyond cavil that judicial economy and efficiency are best served by exercising the jurisdiction that so clearly exists"). Moreover, Judge Proctor, who presides over the MDL for purposes of pretrial coordination, has heard a number of bankruptcy appeals and has experience with these issues. *See, e.g.*, *Dudley v. Buffalo Rock Co.*, 2021 WL 1164380 (N.D. Ala. Mar. 26, 2021); *Brown v. Gore*, 2012 WL 6609005 (N.D. Ala. Dec. 13, 2012).

Thus, the "close nexus" test, which "can only be properly applied by looking at the whole picture," is easily met here for two independent reasons. *In re Wilshire,* 729 F.3d at 1289.

***First***, this Action affects the implementation, execution, and administration of the confirmed Plan. The Plan explicitly charges VHS Liquidating Trust to "sue on or defend, pursue, prosecute . . . or otherwise deal with . . . the Causes of Action in favor of or against the Liquidating Trust." Dkt. 1-1, Plan § 6.5(b)(vi). The claims that the Plan charges VHS Liquidating Trust with enforcing include "claims against health plans," such as the instant Action. *Id.* § 13.9(a)(ix). VHS Liquidating Trust thus brought the instant Action in execution of this Plan directive. Plaintiffs admit as much in their

Remand Motion: "Verity, as directed by the liquidating trustee, pursued the Causes of Action in a manner determined by the trustee to 'maximize the value of the Liquidating Trust.'" Mtn. to Remand at 7.

According to Plaintiffs, in addition to prosecuting Causes of Action, the Plan also charges VHS Liquidating Trust to "cause all net proceeds of the Trust Assets, including proceeds of Causes of Action . . . to be deposited into the Liquidating Trust," and "to make payments and distributions to Holders of Allowed Claims, including Trust Beneficiaries." *Id*. If this Action results in proceeds to Plaintiffs, that too will require implementation and execution of the Plan.

The Ninth Circuit recognizes that post-confirmation "cases involving continuing trusts . . . by their nature maintain a connection to the bankruptcy even after the plan has been confirmed." *Pegasus Gold Corp*., 394 F.3d at 1194. In *Pegasus*, the Ninth Circuit held that the removed action "could affect the implementation and execution of the Plan itself" in part because, like here, the confirmed plan "specifically called for the creation of [the entity] and transfer of debtor money to fund it." *Id*. Such a case will "typically have the requisite close nexus." *Id*.

This is particularly true here, where the Plan explicitly includes claims "arising from claims against health plans" such as the claims asserted against the Blue Plans in this Action. Dkt. 1-1, Plan § 13.9(a)(ix). "Where a claim is specified in the Plan and reserved for prosecution by the trustee on behalf of the creditors, such facts support 'related to' jurisdiction." *In re Consol. Meridian Funds*, 511 B.R. 140, 146 (W.D. Wash. 2014). Courts applying the close nexus test have found "related to" jurisdiction where, as here, the plan of liquidation specifically reserved the claims at issue and transferred them to the liquidating trust. *See, e.g.*, *In re Residential Cap. LLC*, 519 B.R. 593, 600 (S.D.N.Y. 2014) (finding close nexus because the "confirmed plan of liquidation expressly preserves . . . claims and transfers them to the liquidating trust to prosecute"); *McKinstry v. Sergent*, 442 B.R. 567, 576 (E.D. Ky. 2011) (finding a close nexus because "the claims against the [ ] defendants were specifically assigned to the trust under the . . . confirmed plan"). This makes sense; such a claim "formed part of the calculus of the parties when negotiating the Plan" and thus the pursuit of that claim "is part of the Plan execution and/or implementation." *Meridian Funds*, 511 B.R. at 146; *see also McKinstry*, 442 B.R. at 576 ("The trust is asserting claims that do not belong to it personally but were

transferred to it as part of the bankruptcy plan—and so the 'implementation' and 'execution' of the confirmed Plan are directly at issue.").

Here, it is beyond question that the claims in this Action "formed part of the calculus of the parties negotiating the Plan." *Meridian Funds*, 511 B.R. at 146. The Complaint claims that Defendants' alleged conduct caused Verity's bankruptcy. Dkt. 1-2, Compl. ¶ 22 (Verity "went bankrupt and closed due to the conduct at issue.") and ¶ 21 ("Defendants' conduct was a substantial factor in causing that bankruptcy."). And at the time the Plan was confirmed, dozens of actions with allegations about this very conduct had already been filed and transferred to the MDL. It defies common sense for Plaintiffs to root the very existence of their bankruptcy proceeding on the alleged antitrust conspiracy—the subject of an ongoing MDL pending for over six years at the time—yet insist that the two are so unrelated that there is no bankruptcy-related jurisdiction here.

Plaintiffs rely on *In re Resorts International* to argue a bankruptcy court's jurisdiction is particularly narrow in actions brought after plan confirmation. Mtn. to Remand at 11 (citing *In re Resorts Int'l, Inc. v. Price Waterhouse & Co., LLP*, 372 F.3d 154 (3d Cir. 2004)). But in that case—a professional malpractice and breach of contract action against an accounting firm hired by the post-confirmation litigation trustee—the ***claim itself arose post-confirmation***. 372 F.3d at 167. A claim arising post-confirmation could not require "interpretation, consummation, execution, or administration of the confirmed plan" so as to satisfy the "close nexus" test—a claim arising post-confirmation could not have been contemplated in the plan at all. *Id*. Put another way, the trust in *In re Resorts Int'l* "sought to enforce claims that belonged to it personally—a malpractice claim against an accounting firm [] for post-confirmation conduct while serving the trust." *McKinstry*, 442 B.R. at 576.

In contrast, "[u]nlike a claim that arose post-confirmation, a claim that was considered by the bankruptcy court when confirming the Plan . . . formed part of the calculus of the parties when negotiating the Plan and the pursuit of [the claim] is part of the Plan execution. *Meridian Funds*, 511 B.R. at 146. In other words, "by specifically identifying and reserving a claim as a potential asset of

the estate to be pursued for the benefit of the estate's creditors, the parties make clear that the claim is related to the bankruptcy Plan." *Id.*[2]

**Second**, the "close nexus" test is satisfied for the independent reason that the matter brought by Plaintiffs "likely require[s] interpretation of the [] Plan." *Pegasus*, 394 F.3d at 1194. As Plaintiffs point out, VHS Liquidating Trust pursued this Action as an asset transferred in accordance with and in the manner laid out in the Plan. Mtn. to Remand at 7. The Trust's standing to bring the claims here depends on the Plan's complicated asset transfer provisions, and this litigation will require interpretation of the applicable Plan language. *See, e.g.*, *In re Wilshire Courtyard*, 729 F.3d at 1290 ("Interpretation of the Plan and Confirmation Order is the only way for a court to determine the essential character of the negotiated Plan transactions in a way that reflects the deal the parties struck in chapter 11 proceedings . . . this is reason enough for the bankruptcy court to exercise jurisdiction in this case.").

Similarly, according to Plaintiffs, in addition to prosecuting causes of action, the Plan also charges VHS Liquidating Trust to "cause all net proceeds of the Trust Assets, including proceeds of Causes of Action . . . to be deposited into the Liquidating Trust," and "to make the payments and distributions to Holders of Allowed Claims, including Trust Beneficiaries." Mtn. to Remand at 7. The Trust can only recover damages on behalf of the hospitals for claims that were transferred to it by the Plan, and the Plan has complicated provisions governing these transfers.

As just one example, Plaintiffs seek damages for hospitals that were allegedly injured by Defendants' unlawful conduct starting in 2008 and continuing until today. Dkt. 1-2, Compl. ¶ 627. The Complaint alleges that VHS Liquidating Trust "controls the claims of St. Louise, St. Francis ["SFMC"] (up until the date of its sale to Prime), St. Vincent, Seton, Seton Coastside, and O'Connor hospitals, their affiliated medical foundations and affiliates, and Verity Health System of California,

---

[2] Plaintiffs' other cases are similarly unavailing. *Laird v. Gianulias* also involved a breach-of-contract claim between business partners that arose post-confirmation and had "no impact on the now-closed bankruptcy proceedings." 2013 WL 4851620, at *5 (N.D. Cal. Aug. 12, 2013). In addition, *Laird* relied on the Ninth Circuit Bankruptcy Appellate Panel's decision in *In re Wilshire Courtyard*, 459 B.R. 416 (B.A.P. 9th Cir. 2011), which the Ninth Circuit subsequently reversed for setting forth "too narrow a version of the 'close nexus' test." 729 F.3d at 1288.

Inc." *Id.* ¶ 114. But VHS Liquidating Trust did not receive a wholesale transfer of every Verity hospital's assets under the Plan. The Plan's definition of "Liquidating Trust Assets" carves out, *inter alia*, "Hospital Purchased Assets," which means "the assets purchased by Prime and AHMC pursuant to the SFMC Asset Purchase Agreement and Seton Asset Purchase Agreement." Plan §§ 1.75, 1.76, 1.97, 1.115.

These are complicated provisions, but the upshot is simple—the Plan dictates on which hospitals' behalf VHS Liquidating Trust can sue. Defendants intend to argue that the terms of the Plan limit the hospitals that VHS Liquidating Trust can use as a basis for obtaining damages. Resolving these issues will require interpretation of the applicable Plan provisions. *See*, *e.g.*, *In re Valley Health Sys*., 584 F. App'x 477, 479 (9th Cir. 2014) (holding bankruptcy court had subject matter jurisdiction where resolution of dispute "would require a court to determine whether the confirmed bankruptcy plan discharged [plaintiffs'] claims").[3]

\* \* \*

Either the implementation/execution nexus or the interpretation nexus independently supports the Court's jurisdiction here. Taken together, and when considering the "whole picture," they easily establish the requisite "close nexus" between this Action and the bankruptcy action. *See*, *e.g.*, *In re Wilshire*, 729 F.3d at 1289. This Court has subject matter jurisdiction and should accordingly deny Plaintiffs' Motion to Remand.

### C. The Discretionary Remand Factors Weigh Strongly Against Remand Here.

Perhaps recognizing the weakness of their jurisdictional argument, Plaintiffs spend the majority of their Remand Motion insisting this Court should remand this Action as a matter of discretion. This argument also fails.

---

[3] *Accord Sun Microsystems Inc. v. Hynix Semiconductor Inc.*, 534 F. Supp. 2d 1101, 1119 (N.D. Cal. 2007) (interpreting bankruptcy plan to find that "the plaintiff trust does not have standing to pursue [antitrust] claims outside the designated time period, as those claims were not transferred to it"); *Meridian Funds*, 511 B.R. at 146–47 ("[A]ny court presiding over the [removed action] . . . will have to interpret the Plan in order to determine the date on which the statute of limitations began to run and whether the trustee has standing to pursue these claims on behalf of the investors. . . . [Both] issues would, if raised, require the presiding court to discern the intent behind and effect of provisions in the Plan . . . .").

Plaintiffs bear the burden of establishing that discretionary remand is proper. *See*, *e.g.*, 8A C.J.S. Bankruptcy § 394 (2021); *Cobalt Partners, LP v. SunEdison, Inc.*, 2016 WL 4488181, at *2 (N.D. Cal. Aug. 26, 2016) ("[A] plaintiff seeking remand has the burden to prove that an express exception to removal exists."). Each of the equitable remand factors discussed by Plaintiffs—as well as critical factors Plaintiffs ignore—overwhelmingly support denial of remand here.[4]

### 1.  Effect on Efficient Administration of the Estate (Plaintiffs' Factor 1)

This factor favors removal. As discussed above, Plaintiffs' claims implicate both interpretation and execution of the Plan. Both are more efficiently overseen by federal courts rather than state courts. *See In re AmericanWest Bancorporation*, 2011 WL 6013779, at *5 ("[A]nalysis of bankruptcy law and procedures is better performed by federal courts than state courts.").

Moreover, the MDL Court is the best situated to resolve Plaintiffs' claims efficiently. That court has a near-decade head start on the factual and legal issues at play. In contrast, the state court would need to redo years of factual and legal analysis. *See In re Mortgages Ltd.*, 452 B.R. 776, 786 (Bankr. D. Ariz. 2011) (recognizing "the strong federal policy in favor of . . . prompt distribution of available assets to creditors").

For example, the court in *Trustees of Masonic Hall* denied a motion for abstention from a case that had been removed from state court to bankruptcy court and then transferred to a pending MDL. *Trustees of Masonic Hall & Asylum Fund v. Pricewaterhousecoopers LLP*, 2009 WL 290543 (S.D.N.Y. Feb. 6, 2009). The court reasoned: "any fair reading of plaintiffs' claims . . . results in the conclusion that they involve the same core facts, allegations, and inferences as other cases involved in the MDL." *Id.* at *4. "[T]hus, far from promoting timely adjudication of the plaintiffs' claims, to remand this action to [state court] would simply complicate and slow down the resolution of those claims, as well as of the matters pending before this Court." *Id.* at *5 (internal quotation marks

---

[4] Plaintiffs reference mandatory and discretionary abstention, but to be clear, neither is available here. *See*, *e.g.*, *Sec. Farms v. Int'l Bhd. of Teamsters*, 124 F.3d 999, 1009 (9th Cir. 1997) (declining to abstain from adjudicating removed action because removal "extinguishe[d] the coordinated state proceedings" and "inherent in the concept of abstention is the presence of a pendent state action in favor of which the federal court must, or may, abstain"). Plaintiffs do not suggest otherwise. *See* Mtn. to Remand at 9 ("[I]n the Ninth Circuit, abstention is not applicable to remand, because after removal there is temporarily no parallel proceeding in state court as required for abstention.").

omitted); *accord In re Enron Corp. Sec., Derivative & ERISA Litig.*, 2002 WL 32107216, at *9 (S.D. Tex. Aug. 12, 2002) ("The transactions challenged in this suit are very complicated, highly sophisticated, and interrelated with numerous other parties named and issues raised in MDL-1446, which this Court has been presiding over for some time . . . . Thus there is a serious question whether this case could be adjudicated in a timely fashion in state court.").

In arguing that this factor favors remand, Plaintiffs take language from the Plan out of context, contending the Plan directs the VHS Liquidating Trustee to pursue the Causes of Action "without need for any further order of the Bankruptcy Court." Mtn. to Remand at 13. But that language simply refers to the ability of the VHS Liquidating Trustee to "be deemed substituted as plaintiff" without further order of the Bankruptcy Court. Dkt. 1-1, Plan § 6.5(b)(iii). This language does nothing to suggest the Plan precludes litigating claims in this Court or any other federal court.[5]

2. Extent to Which State Law Issues Predominate Over Bankruptcy Issues (Plaintiffs' Factor 2); Difficulty or Unsettled Nature of the Applicable State Law (Plaintiffs' Factor 3)

These two factors are related, and they both favor removal. There are no state law specific issues in Plaintiffs' Complaint. While their primary claims are framed as state law antitrust claims, Plaintiffs concede that their claims simply track the Sherman Act. Dkt. 1-2, Compl. ¶ 17 (alleging that if Defendants' conduct "violates the Sherman Act in Alabama federal court, it violates the Cartwright Act in California state court"). Indeed, other actions alleging identical Cartwright Act

---

[5] Plaintiffs' cite to *Bally Total Fitness* is also inapposite. Mtn. to Remand at 14 (citing *Bally Total Fitness Corp. v. Contra Costa Retail Ctr.*, 384 B.R. 566, 572 (Bankr. N.D. Cal. Feb. 20, 2008).) Plaintiffs quote that case out of context to suggest a broad rule that this factor favors remand when a plan has already been confirmed. But *Bally*, which involved a confirmed reorganization plan (not a liquidation plan), announced no such rule. In that case, Bally contended that remanding an eviction lawsuit involving one of its facilities would cause Bally to lose money out of its bankruptcy estate. The court rejected Bally's argument that this would lead to inefficient administration of its bankruptcy estate, noting that the bankruptcy plan had already been confirmed and thus there was no bankruptcy estate from which money could be lost. But the court did nothing to suggest some broad rule that this factor always favors remand where a plan has been confirmed. Even if it had, because Plaintiff is a liquidating trust, it would make no sense to apply such a rule here. While a bankruptcy estate no longer exists after a reorganization like in *Bally*, that is not the case for a liquidation. *See In re Mortgages Ltd.*, 452 B.R. at 785 (recognizing the distinction between "reorganized debtors that reenter the marketplace" and "liquidating debtor[s] that exists for the singular purpose of executing an order of the bankruptcy court").

claims have already been centralized in the MDL. *See, e.g.*, Notice of Removal and Complaint, *Sheridan v. Blue Cross of California*, No. 13-cv-990, Dkt. 1 (N.D. Ala. Apr. 29, 2013). Thus, state law issues do not predominate. *See Trustees of Masonic Hall*, 2009 WL 290543, at *6 (declining to abstain even though the claims were based entirely on state law because the claims were "straightforward" and did "not involve arcane or idiosyncratic provisions of state law that would warrant abstention based on comity concerns") (internal quotation marks omitted).

For the same reason, there are no difficult or unsettled issues of state law. In considering this factor, courts look at whether there is a "novel" issue of state law. *E.g.*, *In re Achugbue*, 2020 WL 1845028, at *13 (Bankr. D. Or. April 10, 2020). As explained above, there is no unique issue of state law, much less a novel one. Plaintiffs fail to cite any authority for the misguided argument that this factor is satisfied because the state court "has already designated this case complex." Mtn. to Remand at 14. Designation by the state court as complex is wholly separate from the prospect of novel legal issues, and can be based on factors as straightforward as the number of parties (here, there are 83). *See* Cal. Rules of Court 3.400; *see also Thayer v. Wells Fargo Bank, N.A.*, 92 Cal. App. 4th 819, 835 n.8 (2001) (rejecting the argument that complex "actions are by definition difficult or novel" because the actions at issue were "'complex' within the meaning of this rule only because of the large number of represented parties in related actions pending in different counties").

### 3. Comity (Plaintiffs' Factor 4)

Given the absence of unique state issues discussed above, comity also does not favor remand. Moreover, "comity's respect for state courts weighs more heavily in favor of remand if a state court has spent time on an action before removal." *In re Achugbue*, 2020 WL 1845028, at *20. This consideration is not applicable here, where Defendants filed for removal within weeks of being served with the Complaint and before the state court had issued any rulings.

Plaintiffs wrongly assert that this factor favors remand because "[t]he case at bar involves California claims between California-based parties." Mtn. to Remand at 15. In reality, ***nine*** out of the thirteen claims are ***not*** based on California law (*see* Dkt. 1-2, Compl. ¶¶ 654-687 (alleging claims under the laws of Alabama, Florida, Indiana, Kansas, Michigan, Nevada, New Jersey, Ohio, and

Rhode Island)), and **76** of the 79 named defendants are **not** domiciled in California. This is anything but a case about "California claims between California-based parties."

4. Relatedness or Remoteness of Bankruptcy Proceeding (Plaintiffs' Factor 5)

This factor also favors removal. As discussed in Part B, Plaintiffs' claims implicate the interpretation, implementation, and administration of the Plan. Plaintiffs cannot credibly suggest the bankruptcy is remote to their claims when their Complaint claims that Defendants' alleged anticompetitive conduct drove them into bankruptcy. Moreover, in support of their argument that this factor supports remand, Plaintiffs cite a bankruptcy court's decision to remand a breach-of-contract case that the court found was "only tangentially related to a bankruptcy" and thus should be remanded "to the more experienced state forum." Mtn. to Remand at 15 (quoting *In re Etheridge*, 2006 WL 4528540, at \*4 (Bankr. D. Or. July 21, 2006)). But here, the **federal** court, and more specifically the MDL, is the "more experienced [] forum" best suited to resolve Plaintiffs' claims.

5. Existence of a Right to a Jury Trial (Plaintiffs' Factor 6)

This factor considers whether proceeding before the bankruptcy court would be inefficient because "all steps short of the jury trial would occur in the bankruptcy court" before "transfer to district court for [a jury] trial." *In re Achugbu*e, 2020 WL 1845028, at \*18. This is not a concern here, as the matter has been conditionally transferred to the MDL, which can efficiently conduct pretrial proceedings and potentially conduct a jury trial with the parties' consent under *Lexecon Inc. v. Milberg Weiss Bershad Hynes & Lerach*, 523 U.S. 26 (1998).[6] *See In re AmericanWest Bancorporation*, 2011 WL 6013779, at \*6 (holding this factor was neutral where related case meant that jury trial was already set to occur in district court). This factor is neutral.

6. Possibility of Prejudice to Other Parties in the Action (Plaintiffs' Factor 7)

Plaintiffs misconstrue this factor as prejudice to the "involuntarily removed party," but the actual query is "possibility of prejudice to *other parties* in the action." *In re Cedar Funding, Inc.*, 419 B.R. 807, 820 n.18 (B.A.P. 9th Cir. 2009) (emphasis added). Here, the possibility of prejudice is most looming for the 79 defendants in this Action that, if Plaintiffs succeed in remanding, would be forced

---

[6] At this early stage of proceedings, the parties have not discussed or provided consent under *Lexecon*.

to litigate identical factual and legal issues twice (assuming the state court even has personal jurisdiction over all 76 non-California-based parties). And in any event, even if the proper inquiry *were* prejudice to Plaintiffs, Plaintiffs are not prejudiced here. As discussed above, both this Court and the MDL Court will administer the litigation more efficiently than state court, which has no experience with the issues in the case. This factor favors removal.

> 7. Presence of a Related Proceeding Commenced in State Court or Other Non-Bankruptcy Court (Plaintiffs' Factor 8)

The "relatedness" contemplated by this factor looks for whether there are related proceedings that are "sufficiently related to the removed action that remand for resolution of both actions in state court would advance judicial economy and consistency." *In re Achugbue*, 2020 WL 1845028, at *16–17. Plaintiffs argue this factor weighs in favor of remand, pointing to the *MultiPlan* antitrust litigation that Plaintiffs also filed in California state court. Mtn. to Remand at 17. But Plaintiffs have not advanced an argument that the *MultiPlan* litigation relates to this Action. Nor could they; the *MultiPlan* litigation alleges an entirely different conspiracy with a vastly different set of alleged co-conspirators.

There is in fact another state proceeding so related to this Action that resolution of both actions together "would advance judicial economy and consistency." *Id*. That proceeding is *Sheridan v. Blue Cross of California, et al*.—another copycat antitrust lawsuit originally filed in California state court. *See* Ex. B, Sheridan Complaint. Like the dozens of other copycat lawsuits, *Sheridan* has been consolidated in the MDL for pretrial proceedings. And like the identity of allegations between this Action and the MDL, this Action and *Sheridan* also have reams of identical or nearly identical allegations. Moreover, *Sheridan* raises claims under California antitrust law that the MDL court is addressing. Thus, judicial economy and consistency dictate that these cases be litigated together—in the MDL. This factor favors removal.

> 8. Jurisdictional Basis, If Any, Other than 28 U.S.C. 1334 (Plaintiffs' Factor 9)

A lack of jurisdictional basis other than section 1334 of the Bankruptcy Code is not a factor "weighing in favor of or against remand." *In re Achugbue*, 2020 WL 1845028, at *14. Rather, this

factor exists because if another source of federal jurisdiction justifies removal, that would foreclose equitable remand altogether. *Id.*

Plaintiffs are correct that there is not a separate jurisdictional basis for Plaintiffs' claims. This is a result of Plaintiffs' artful pleading, and this factor is accordingly neutral. *See* Dkt. 1-2, Compl. ¶ 15 (alleging "[t]he exact same conduct" challenged in the MDL overseen by "the Alabama Federal Court" "is at issue in this lawsuit"); *id.* ¶ 17 (alleging that if the challenged conduct "violates the Sherman Act in Alabama federal court, it violates the Cartwright Act in California state court"). *See* Ex. A, Table of Selected Copycat Allegations.

9.    Substance Rather than Form of an Asserted "Core" Proceeding (Plaintiffs' Factor 10); Feasibility of Severing State Law Claims from Core Bankruptcy Matters (Plaintiffs' Factor 11)

Plaintiffs suggest both of these factors weigh in favor of remand. Not so. Where a proceeding is not core but falls under "related to" jurisdiction, these factors are "irrelevant" and are thus neutral. *In re Cytodyn of New Mexico, Inc.*, 374 B.R. 733, 740 (Bankr. C.D. Cal. 2007); *In re Achugbue*, 2020 WL 1845028, at 16–17.

10.    Burden on the Bankruptcy Court's Docket (Plaintiffs' Factor 12)

This factor weighs in favor of removal because the state court has a more crowded docket than this Court or the MDL. *See Cytodyn*, 374 B.R. at 741. In fact, the Superior Court of the State of California, County of Alameda, is one of the most backlogged courts in the state judicial system. *See* Judicial Council of California, 2021 Court Statistics Report, Statewide Caseload Trends at 120-21, https:www.courts.ca.gov/documents/2021-Court-Statistics-Report.pdf (noting ninth slowest at civil processing time statewide).

11.    Likelihood of Forum Shopping (Plaintiffs' Factor 13)

The factor as formulated by Plaintiffs (i.e., the "likelihood that the commencement of the proceeding in bankruptcy court involves forum shopping") is ill-fitting here because "[t]his factor was formulated with respect to abstention rather than remand." *In re Achugbue*, 2020 WL 1845028, at *17. The concept "still applies" in discretionary remand analysis but encompasses more general forum shopping considerations than Plaintiffs recognize. *Id.*

This factor favors removal: Plaintiffs' Complaint was forum-shopping in and of itself. Plaintiffs brought a copycat action but removed the federal law claims precisely to try to avoid federal court jurisdiction. *See Stichting Pensioenfonds ABP v. Countrywide Fin. Corp.*, 447 B.R. 302. 312 (C.D. Cal. 2010) (holding factor was neutral where "Plaintiff accuses the Defendants of forum shopping, but the facts suggest Plaintiff, too, is forum shopping . . . [t]he suit is an 'opt-out' case related directly to a nearly identical suit proceeding" in federal district court).

### 12. Presence in the Proceeding of Nondebtor Parties (Plaintiffs' Factor 14)

The presence of non-debtor/non-creditor defendants should not weigh in favor of remand; all 79 defendants support removal here. Thus, this factor is neutral. *See*, *e.g.*, *In re Neel*, 554 B.R. 241, 249 (Bankr. Or. 2016) ("It is true that the defendants [] are all 'non-debtor parties.' But it was some of those same defendants who removed [the matter] to this court and have expressed a strong preference that this court retain jurisdiction.").

### 13. Factors Not Mentioned by Plaintiffs Also Favor Removal

Plaintiffs failed to identify two critical factors that courts consider when determining discretionary remand: "judicial economy" and the "possibilit[y] of inconsistent results." *See*, *e.g.*, *In re Sequoia Vill., LLC*, 2012 WL 478926, at *1-2 (Bankr. D. Or. Feb. 14, 2012).

Both factors strongly favor removal. When related cases are pending in federal court such that remand to state court from the bankruptcy court would result in related cases being heard in state and federal courts, "[j]udicial economy would best be served by having the two cases heard by the same court rather than in state and federal courts." *Id*. at *2; s*ee also Trustees of Masonic Hall*, 2009 WL 290543, at *6 ("[G]iven the similarly close connection between this pair of actions and the [] MDL, it is beyond cavil that judicial economy and efficiency are best served by exercising the jurisdiction that so clearly exists."). Indeed, the entire purpose of MDL proceedings is "to further judicial economy and to eliminate the potential for conflicting pretrial rulings." *Sanborn*, 2009 WL 195922, at *2.

\*　　\*　　\*

Plaintiffs have failed to meet their burden of showing the discretionary remand factors weigh in favor of remand. To the contrary, the factors clearly point in favor of this Action remaining in federal court with the other copycat cases.

**IV.    CONCLUSION**

The Court should grant BCBSA's earlier-filed Stay Motion and defer any ruling on Plaintiffs' Remand Motion until after the JPML issues a final transfer decision. If the JPML denies transfer, this Court should deny Plaintiffs' Remand Motion because the Court has "related to" jurisdiction under 28 U.S.C. § 1334(b), and the discretionary remand factors favor this action remaining in federal court.

DATED: October 29, 2021

Respectfully submitted,

*/s/ Daniel Laytin*

Tobias S. Keller (SBN 151445)
tkeller@kbkllp.com
Thomas B. Rupp (SBN 278041)
trupp@kbkllp.com
KELLER BENVENUTTI KIM LLP
650 California Street, Suite 1900
San Francisco, California 94108
Telephone: (415) 496-6723
Facsimile: (650) 636-9251

Mark McKane (SBN 230552)
mmckane@kirkland.com
Michael P. Esser (SBN 268634)
michael.esser@kirkland.com
KIRKLAND & ELLIS LLP
555 California Street, 27th Floor
San Francisco, CA 94104
Telephone: (415) 439-1400
Facsimile: (415) 439-1500

David Zott (*pro hac vice*)
dzott@kirkland.com
Daniel Laytin (*pro hac vice*)
dlaytin@kirkland.com
Zachary Holmstead (*pro hac vice*)
zachary.holmstead@kirkland.com
KIRKLAND & ELLIS LLP
300 North LaSalle Street
Chicago, IL 60654
Telephone: (312) 862-2000
Facsimile: (312) 862-2200

*Attorneys for Defendant*
*Blue Cross Blue Shield Association*

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## CERTIFICATE OF SERVICE

I, Daniel Laytin, attorney for Defendant Blue Cross Blue Shield Association, certify that, on October 29, 2021, I caused a copy of the foregoing to be served electronically on the following counsel:

Patrick M. Ryan
Patrick E. O'Shaughnessy
John F. McLean
Oliver Q. Dunlap
Sean R. McTigue
BARTKO ZANKEL BUNZEL & MILLER
One Embarcadero Center, Suite 800
San Francisco, CA 94111
Telephone: (415) 956-1900
Facsimile: (415) 956-1152
pryan@bzbm.com
poshaughnessy@bzbm.com
jmclean@bzbm.com
odunlap@bzbm.com
smctigue@bzbm.com

*Attorney for Plaintiffs*

Timothy S. Laffredi
Office of The United States Trustee
450 Golden Gate Avenue, 5th Floor, Suite #05-0153
San Francisco, CA 94102
timothy.s.laffredi@usdoj.gov

*Assistant United States Trustee*

                                        */s/ Daniel Laytin*_____
                                        Daniel Laytin