John D. Fiero (CA Bar No. 136557)
PACHULSKI STANG ZIEHL & JONES LLP
One Market Plaza, Spear Tower
40th Floor, Suite 4000
San Francisco, California 94105-1020
Telephone: (415) 263-7000
Facsimile: (415) 263-7010
E-mail: jfiero@pszjlaw.com

PATRICK M. RYAN (SBN 203215)
  pryan@bzbm.com
JOHN F. McLEAN (SBN 55914)
  jmclean@bzbm.com
OLIVER Q. DUNLAP (SBN 225566)
  odunlap@bzbm.com
SEAN R. McTIGUE (SBN 286839)
  smctigue@bzbm.com
BARTKO ZANKEL BUNZEL & MILLER
A Professional Law Corporation
One Embarcadero Center, Suite 800
San Francisco, California 94111
Telephone: (415) 956-1900
Facsimile:  (415) 956-1152

Attorneys for Plaintiffs
VHS LIQUIDATING TRUST, PRIME
HEALTHCARE SERVICES, INC., PRIME
HEALTHCARE FOUNDATION, INC. and
PRIME HEALTHCARE MANAGEMENT, INC.

# UNITED STATES BANKRUPTCY COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

## OAKLAND DIVISION

| | |
|---|---|
| VHS LIQUIDATING TRUST, *et al.*,<br><br>　　　　　Plaintiffs,<br><br>　　v.<br><br>BLUE CROSS OF CALIFORNIA, *et al.*,<br><br>　　　　　Defendants. | Adv. Proc. No. 4:21-ap-4034<br><br>The Hon. Judge Charles Novack<br><br>**PLAINTIFFS' REPLY IN SUPPORT OF MOTION TO REMAND**<br><br>Date:　November 12, 2021<br>Time:　11:00 a.m.<br>Dept.:　215 via Zoom Webinar<br><br>Removed from the Superior Court of the State of California, County of Alameda (Case No. RG21106600)<br><br>Action Filed in Alameda Superior Court: July 27, 2021<br><br>Complaint Served On: August 23, 2021 (earliest date a Defendant was served)<br><br>Notice of Removal Filed: September 22, 2021 |

# TABLE OF CONTENTS

| | | | Page |
|---|---|---|---|
| I. | SUMMARY OF REPLY | | 6 |
| II. | ARGUMENT | | 7 |
| | A. | The Motion to Stay Exists Apart From the Motion to Remand, and Is Addressed in the Opposition to the Motion to Stay. | 7 |
| | B. | Defendants Have Failed to Meet Their Burden of Proving a "Close Nexus." | 7 |
| | | 1. A Purported Wholesale Reservation of Claims Cannot Satisfy the *Resorts* Test and Constitutes an Unconstitutional Attempt By the Plan Administrators to Confer Federal Jurisdiction Upon Themselves. | 9 |
| | | 2. Defendants' Pre-Confirmation Misconduct Is Irrelevant. | 12 |
| | | 3. The Fact that a Verdict in Plaintiffs' Favor May Trigger Payment Under the Terms of the Plan Does Not Create a Close Nexus | 13 |
| | C. | State Courts Are Coequal to Federal Courts, and Plaintiffs' State Law Claims Are Not Mere Artful Reframing of Federal Law Claims. | 15 |
| | D. | The Factors Governing Equitable Remand Concern Whether the Case Ought To Be in *State* Court or the *Bankruptcy* Court, Not Whether the Case Ought To Be in *Any* Federal Court Rather than State Court. | 16 |
| III. | CONCLUSION | | 20 |

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*In re AmCad Holdings, LLC*
  2016 WL 3412289 (Bankr. D. Del. June 14, 2016) ....................................................... 9, 10, 12

*Best Western Int'l Inc. v. Paradise Hospitality Inc.*
  2014 WL 4209246 (D. Ariz. Aug. 26, 2014) ......................................................................... 14

*Black v. Monster Bev. Corp.*
  2016 WL 81474 (C.D. Cal. Jan. 7, 2016) .............................................................................. 19

*In re Captain Blythers, Inc.*
  311 B.R. 530 (9th Cir. 2004) ................................................................................................. 10

*Celotex Corp. v. Edwards*
  514 U.S. 300 (1995) ................................................................................................................ 7

*City of Corona v. 3M Co.*
  2021 WL 3829700 (C.D. Cal. Aug. 27, 2021) ........................................................................ 7

*Cohens v. Virginia*
  19 (6 Wheat.) 264 (1821) ...................................................................................................... 15

*Conroy v. Fresh Del Monte Produce, Inc.*
  325 F. Supp. 2d 1049 (C.D. Cal. 2004) ................................................................................... 8

*In re Consolidated Meridian Funds*
  511 B.R. 140 (W.D. Wash. 2014) ................................................................................. 8, 9, 14

*Fabricant v. Elavon, Inc.*
  2021 WL 1593238 (C.D. Cal. Mar. 8, 2001) ........................................................................ 19

*Fed. Home Loan Bank of Chicago v. Bank of Am.*
  448 B.R. 517 (2011) .............................................................................................................. 20

*Flashpoint Tech., Inc. v. Vivitar Corp.*
  2011 WL 13233544 (D. Conn. Oct. 20, 2011) ...................................................................... 14

*Franchise Tax Bd. v. Constr. Laborers Vacation Trust for S. Cal.*
  463 U.S. 1 (1983) .................................................................................................................... 7

*Gaus v. Miles, Inc.*
  980 F.2d 564 (9th Cir.1992) .................................................................................................... 7

*In re Global Inc.*
  2016 WL 6901265 (Bankr. 9th Cir. Nov. 22, 2016) ............................................................. 12

*Goodwin v. Kajian*
    2013 WL 1528966 (C.D. Cal. April 12, 2013) ................................................................ 8

*Hendricks v. Dynergy Power Marketing, Inc.*
    160 F. Supp. 2d 1144 (S.D. Cal. 2001) ...................................................................... 15

*Hopkins v. Plant Insulation Co.*
    349 B.R. 805 (N.D. Cal. 2006) .................................................................................. 16

*Hull v. Burr*
    234 U.S. 712 (1914) .................................................................................................. 15

*In re Insilco Tech., Inc.*
    330 B.R. 512 (D. Del. Bankr. 2005) ................................................................... 10, 13

*In re Int'l Mfg. Group, Inc.*
    574 B.R. 717 (Bankr. E.D. Cal. 2017) ................................................................ 13, 14

*In re Ketscher*
    2014 WL 2615177 (E.D. Cal. June 5, 2014) .............................................................. 8

*Laird v. Gianulias*
    2013 WL 4851620 (N.D. Cal. Aug. 12, 2013) ...................................................... 7, 14

*Lippitt v. Raymond James Fin. Servs., Inc.*
    340 F.3d 1033 (9th Cir. 2003) .................................................................................. 15

*Maya, Ltd. Liab. Co. v. Cytodyn of N.M., Inc. (In re Cytodyn of N.M., Inc.)*
    374 B.R. 733 (Bankr. C.D. Cal. 2007) ......................................................... 16, 18, 19

*McKinstry v. Sergent*
    442 B.R. 567 (E.D. Ky. 2011) .................................................................................... 9

*ML Servicing Co., Inc. v. Greenberg Traurig, LLP*
    2011 WL 3320916 (D. Ariz. Aug. 2, 2011) ........................................................ 13, 14

*In re Nobel Group, Inc.*
    529 B.R. 284 (Bankr. N.D. Cal. 2015) ......................................................... 10, 11, 12

*In re Pegasus Gold Corp.*
    394 F.3d 1189 (9th Cir. 2005) ..................................................................... 8, 13, 14, 15

*In re Premium Servs., Inc.*
    342 B.R. 390 (D.D.C. Bankr. 2006) ............................................................................ 7

*In re Residential Cap., LLC*
    519 B.R. 593 (S.D.N.Y 2014) ..................................................................................... 9

*In re Resorts Int'l, Inc.*
    372 F.3d 154 (3d Cir. 2004) ............................................................................... *passim*

*Rivet v. Regions Bank*
 522 U.S. 470 (1998) ............................................................................................................ 7, 14

*SEC v. U.S. Realty & Imp. Co.*
 310 U.S. 434 (1940) ............................................................................................................ 6, 20

*Shamrock Oil & Gas Corp. v. Sheets*
 313 U.S. 100 (1941) ................................................................................................................. 19

*Shoemaker v. Batesville Hosp. Mgmt., Inc.*
 2008 WL 294551 (N.D. Miss. Jan. 31, 2008) .......................................................................... 13

*Sovereign Partners Ltd. Partnership v. Rest. Teams Int'l Inc.*
 1999 WL 993678 (S.D.N.Y. Nov. 2, 1999) ............................................................................... 9

*Stanger v. Walker Land & Cattle, LLC*
 597 B.R. 916 (D. Idaho 2019) .................................................................................................. 15

*In re Swan Transp. Co.*
 596 B.R. 127 (D. Del. Bankr. 2018) ......................................................................................... 14

*In re Swetic*
 493 B.R. 635 (M.D. Fla. Bankr. 2013) ....................................................................................... 9

*Tucker v. Apple Computer, Inc.*
 493 F. Supp. 2d 1090 (N.D. Cal. 2006) .................................................................................... 17

*United States v. Ceja-Prado*
 333 F.3d 1046 (9th Cir. 2003) .................................................................................................. 19

*Younger v. Harris*
 401 U.S. 37 (1971) ................................................................................................................... 19

**Statutes**

28 United States Code § 1452(b) ................................................................................................. 16

Business and Professions Code § 17200 ...................................................................................... 15

**Other Authorities**

*Mark Twain on Writing: "Kill Your Adjectives,"* Forbes,
 http://www.forbes.com/sites/katelee/2012/11/30/mark-twain-on-writingkill-
 your-adjectives ........................................................................................................................... 9

# I. SUMMARY OF REPLY

It is important to remember what is really going on here. The question presented is "should the Bankruptcy Court remand the instant lawsuit to state court where:

(a) one of the Plaintiffs is a liquidating trust successor to a bankruptcy estate under a confirmed plan;

(b) the three other Plaintiffs are non-debtors that never filed for bankruptcy;

(c) the Complaint at issue alleges no federal antitrust claims (or federal claims of any kind);

(d) the Defendants seek to use the Bankruptcy Court not to interpret or implement the Plan, but rather as a way station from which the matter can be transferred to a multidistrict litigation pending in Alabama;

(e) there is no diversity jurisdiction "hook" that would have allowed this case to be filed in federal court in the first place, thereby depriving federal courts of subject matter jurisdiction unless the Defendants can somehow establish "related to" jurisdiction under 28 U.S.C. §1334(b).

Perhaps because these simple facts are so outcome determinative, Defendants decline to engage with the applicable standards and tests as they exist, and instead attempt to transform them into standards that would allow Defendants to misuse the removal process to drag cases without federal jurisdiction into federal multidistrict litigation. The brazenness of their attempt shines through in their own assessment of the equitable remand factors applicable to bankruptcy courts, instead making their arguments as if this case had already been transferred into the *In re Blue Cross Blue Shield Antitrust Litigation* MDL pending in the Northern District of Alabama. This circular effort to twist the applicable standards must be rejected.

Bankruptcy removal exists to provide appropriate oversight to litigation that impacts an ongoing bankruptcy case by removing it from a non-Bankruptcy Court and transferring it to the Bankruptcy Court. None of the rationales for this oversight apply to the maneuver Defendants seek to execute here. Accordingly, this Court should exercise its gatekeeping function and "protect[] its own jurisdiction from misuse." *SEC v. U.S. Realty & Imp. Co.*, 310 U.S. 434, 456 (1940).

## II. ARGUMENT

### A. The Motion to Stay Exists Apart From the Motion to Remand, and Is Addressed in the Opposition to the Motion to Stay.

As a preliminary matter, Plaintiffs' response to Defendants' motion to stay is set forth in the Opposition to the Motion to Stay. (Dkt. 105.) In brief summary, the question of whether or not it furthers judicial economy to stay a case before ruling on a pending motion to remand turns on whether "the remand issue is highly similar to cases in the MDL" or it "is unique to the case at hand." *City of Corona v. 3M Co.*, 2021 WL 3829700, at *2 (C.D. Cal. Aug. 27, 2021). Here, the remand issue—whether or not this case is "related to" Verity Health System's bankruptcy with a "close nexus" to the Plan, its interpretation and implementation—is unique to this case and shares nothing in common with other issues determined in the MDL. Accordingly, this Court should rule on the Motion to Remand now in order to provide efficient guidance to the JPML in ruling on the pending Motion to Vacate.

### B. Defendants Have Failed to Meet Their Burden of Proving a "Close Nexus."

"The jurisdiction of the bankruptcy courts, like that of other federal courts, is grounded in, and limited by, statute." *Celotex Corp. v. Edwards*, 514 U.S. 300, 307 (1995). As such, in bankruptcy cases—as in all other cases—"Federal jurisdiction must be rejected if there is any doubt as to the right of removal in the first instance." *Laird v. Gianulias*, 2013 WL 4851620, at *2 (N.D. Cal. Aug. 12, 2013) (quoting *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir.1992)). Further, bankruptcy removal is subject to the "well-pleaded complaint rule" which dictates that the existence of federal jurisdiction "must be 'presented on the face of the plaintiffs properly pleaded complaint.'" *Laird*, 2013 WL 4851620, at *2 (quoting *Franchise Tax Bd. v. Constr. Laborers Vacation Trust for S. Cal.*, 463 U.S. 1, 9-10 (1983)). This rule dictates that the fact that a "defendant may raise" a federal law issue "is not sufficient" to create federal jurisdiction. *Id.* at 10. Thus, a defendant's anticipated "defense cannot be a basis for removal." *Laird*, 2013 WL 4851620, at *6 (citing *Rivet v. Regions Bank*, 522 U.S. 470, 475 (1998)). Moreover, "[j]udicial economy itself does not justify federal jurisdiction," including bankruptcy jurisdiction. *In re Premium Servs., Inc.*, 342 B.R. 390, 406 (D.D.C. Bankr. 2006). Thus, Defendants' pleas that this

Court should strain to find federal jurisdiction so that this Court may "transfer . . . this Action" to "the MDL" are wholly without merit. (Defendants' Opposition to Plaintiffs' Motion to Remand, Dkt. 104 ("Opp.") at 7:1-2.)

Defendants misleadingly assert that such jurisdiction exists here because "[a] bankruptcy court's 'related to' jurisdiction is *very broad*, including nearly every matter directly or indirectly related to the bankruptcy." (*Id.* at 11:26-27 (emphasis added).) But broad jurisdiction only applies pre-confirmation. "[P]ost-closure 'related to' jurisdiction" is decidedly "*narrow*." *In re Ketscher*, 2014 WL 2615177, at *1 (E.D. Cal. June 5, 2014) (emphasis added). While courts in other circuits have applied "assorted postconfirmation approaches," the Ninth Circuit has adopted the test promulgated by *In re Resorts Int'l, Inc.*, 372 F.3d 154 (3d Cir.2004) ("*Resorts*").[1] *In re Pegasus Gold Corp.*, 394 F.3d 1189, 1194 (9th Cir. 2005) ("*Pegasus*").

Under the *Resorts* test, the removing party must prove that "there is a close nexus to the bankruptcy plan or proceeding." *Pegasus*, 394 F.3d at 1194 (quoting *Resorts*, 372 F.3d at 166-67). For a "close nexus" to exist, "the claim must affect an integral aspect of the bankruptcy process." *Resorts*, 372 F.3d at 167. Under the *Resorts* test, jurisdiction is "limited to claims that could 'affect the interpretation, implementation, consummation, execution, or administration of the plan.'" *In re Consolidated Meridian Funds*, 511 B.R. 140, 143 (W.D. Wash. 2014) (quoting *Pegasus*, 394 F.3d at 1194). This test "recognizes the limited nature of post-confirmation jurisdiction." *Pegasus*, 394 F.3d at 1194. This limited jurisdiction is necessary because principles of federalism require courts to reject any interpretation that "could endlessly stretch a bankruptcy court's jurisdiction" such as the notion advanced by Defendants that "jurisdiction lies because the action could conceivably increase the recovery to creditors." *Id.* at 1194 n.1.

Tacitly conceding the falsity of their claim that "very broad" jurisdiction is available in this case, Defendants repeatedly posit that "the 'close nexus' test is *easily* met" here. (*E.g.*, Opp. at

---

[1] This fact also further demonstrates why Defendants' motion to stay should be denied because where a remand issue turns on the transferor court's circuit's law, it is more efficiently decided by that court than an MDL in another circuit. *E.g.*, *Goodwin v. Kajian*, 2013 WL 1528966, at *2 (C.D. Cal. April 12, 2013); *Conroy v. Fresh Del Monte Produce, Inc.*, 325 F. Supp. 2d 1049, 1054 (C.D. Cal. 2004).

8:23, 12:22, 16:15-16 (emphasis added).) Adverbs and "adjectives, however, do not substitute for legal reasoning."[2] *Sovereign Partners Ltd. Partnership v. Rest. Teams Int'l Inc.*, 1999 WL 993678, at *4 (S.D.N.Y. Nov. 2, 1999). Here, black-letter law reveals that Defendants cannot satisfy their burden of proving a "close nexus" for myriad reasons.

### 1. A Purported Wholesale Reservation of Claims Cannot Satisfy the *Resorts* Test and Constitutes an Unconstitutional Attempt By the Plan Administrators to Confer Federal Jurisdiction Upon Themselves.

Defendants posit that a "close nexus" exists when "the plan of liquidation specifically reserved the claims at issue and transferred them to the liquidating trust." (Opp. at 13:19-21 (citing *In re Residential Cap., LLC*, 519 B.R. 593, 600 (S.D.N.Y 2014) and *McKinstry v. Sergent*, 442 B.R. 567, 576 (E.D. Ky. 2011). Based on this contention, Defendants claim that this proves the requisite close nexus exists here because "the Plan explicitly includes [all] claims 'arising from claims against health plans.'" (Opp. at 13:15-16.) This argument—which is too clever by half—fails for two independent reasons.

First, the Plan here did not reserve *specific* enumerated claims. Instead, it "preserved" **all** "claims or Causes of Action . . . without limitation . . . includ[ing] without limitation," **all** conceivable "claims, rights or other causes of action . . . arising from claims against health plans." Dkt.1-1, Plan at p. 64-65, § 13.9(a)(ix). As the cases cited by Defendants suggest, *some* courts have opined that a discrete reservation of specified claims may in some measure "support 'related to' jurisdiction"—though such a reservation is not dispositive. *In re Consolidated Meridian Funds*, 511 B.R. at 146. This is so because under the *Resorts* test, "[a] chapter 11 plan that retains jurisdiction over a specific cause of action" supports "the close nexus requirement" because "[r]etention of jurisdiction over a specific cause of action suggests litigation of that action is critical to the plan's implementation." *In re AmCad Holdings, LLC*, 2016 WL 3412289, at *2

---

[2] Mark Twain condemned such embellishment, advising "When you catch an adjective kill it." *In re Swetic*, 493 B.R. 635, 639 (M.D. Fla. Bankr. 2013) (quoting *Mark Twain on Writing: "Kill Your Adjectives,"* Forbes, http://www.forbes.com/sites/katelee/2012/11/30/mark-twain-on-writingkill-your-adjectives).

(Bankr. D. Del. June 14, 2016) (emphasis added) (citing *Resorts*, 372 F.3d at 167). But "a ***wholesale assignment of causes of action*** from the bankruptcy estate to a post-confirmation trust ***fails to establish a close nexus as to any specific cause of action***" because it "***raise[s] the specter of unending jurisdiction over continuing trusts***." *In re AmCad Holdings, LLC*, 2016 WL 3412289, at *2 (emphasis added) (citing *Resorts*, 372 F.3d at 167); *accord In re Insilco Tech., Inc.*, 330 B.R. 512, 523-24 (D. Del. Bankr. 2005). Such an omnibus reservation of jurisdiction does not constitute a "close nexus" conferring jurisdiction "to hear pre-petition state law claims, pursued post-confirmation by a liquidating trust" when "[t]he only nexus to th[e] bankruptcy case is that the plaintiff . . . is a liquidating trustee representing a group of creditors appointed pursuant to [a] confirmed plan of reorganization." *In re Insilco Tech., Inc.*, 330 B.R. at 523-24.

Thus, because Defendants' reservation did not involve *any specific cause of action* which was "specifically assigned to the trust under the . . . confirmed plan" (Opp. at 13:24-25), but instead was "a wholesale assignment of causes of action from the bankruptcy estate to a post-confirmation trust," no close nexus exists because Defendants' misreading "raise[s] the specter of unending jurisdiction over continuing trusts." *In re AmCad Holdings, LLC*, 2016 WL 3412289, at *2.

Second, allowing such a wholesale assignment of causes of action to confer federal jurisdiction over every conceivable unenumerated future claim would run afoul of the constitutional rule that "bankruptcy court jurisdiction is conferred by statute" and as such a Plan "cannot confer subject matter jurisdiction where none exists." *In re Nobel Group, Inc.*, 529 B.R. 284, 291 (Bankr. N.D. Cal. 2015). Rather, "the cases where a close nexus was found involved a situation where resolution of the dispute would require the bankruptcy court to interpret or enforce a provision of the confirmed plan." *Id.* Here, of course, Defendants seek no such thing. They simply want this Court to serve as a federal court launching pad for this matter to be sent to the District Court in Alabama.

The Ninth Circuit has held that a Plan cannot reserve jurisdiction for future disputes by specifying that the bankruptcy court will "retain exclusive jurisdiction" over future claims: "jurisdiction is not created simply by including such a term in a plan or confirmation order." *In re Captain Blythers, Inc.*, 311 B.R. 530, 538 (9th Cir. 2004). Thus, no blanket reservation of claims

can create the required "close nexus" because "'neither the bankruptcy court nor the parties can write their own jurisdictional ticket.'" *In re Nobel Group, Inc.*, 529 B.R. at 291 (quoting *Resorts*, 372 F.3d at 161).

Here, the Plan purports to make a wholesale assignment of all unsettled "claims or Causes of Action . . . without limitation . . . includ[ing] without limitation," all conceivable "claims, rights or other causes of action . . . arising from claims against health plans."[3] Dkt.1-1, Plan at p. 65,

---

[3] In addition to these claims, the Plan also purports to preserve every conceivable present or future cause of action:

> (i) . . . against vendors, suppliers of goods or services (including attorneys, accountants, consultants or other professional service providers), utilities, contract counterparties, and other parties for, including but not limited to: (A) services rendered; (B) over- and under-payments, back charges, duplicate payments, improper holdbacks, deposits, warranties, guarantees, indemnities, setoff or recoupment; (C) failure to fully perform or to condition performance on additional requirements under contracts with any one or more of the Debtors; (D) wrongful or improper termination, suspension of services or supply of goods, or failure to meet other contractual or regulatory obligations; (E) indemnification and/or warranty claims; or (F) turnover causes of action arising under §§ 542 or 543;
>
> (ii) against landlords or lessors, including, without limitation, for erroneous charges, overpayments, returns of security deposits, indemnification, or for environmental claims;
>
> (iii) arising against current or former tenants or lessees, including, without limitation, for non-payment of rent, damages, and holdover proceedings;
>
> (iv) arising from damage to Debtors' property;
>
> (v) relating to claims, rights, or other causes of action the Debtors may have to interplead third parties in actions commenced against any of the Debtors;
>
> (vi) for collection of a debt owed to any of the Debtors;
>
> (vii) against insurance carriers, reinsurance carriers, underwriters or surety bond issuers relating to coverage, indemnity, contribution, reimbursement or other matters;
>
> (viii) relating to pending litigation, including, without limitation, litigation related to the SGM Claims and any other claims or causes of action related thereto, and the suits, administrative proceedings, executions, garnishments, and attachments listed in Attachment 4a to each of the Debtors' Statements of Financial Affairs;
>
> ****
>
> (x) that constitute Avoidance Actions;
>
> (xi) arising under or relating to any and/or all asset purchase agreements and related

§ 13.9(a)(ix). In other words, under Defendants' interpretation the Plan purports to reserve "related to" jurisdiction over every conceivable "claim[] against a health plan." But it is settled that "'[w]here a court lacks subject matter jurisdiction over a dispute," a Plan administrator cannot "'create it . . . in a plan of reorganization.'" *In re Nobel Group, Inc.*, 529 B.R. at 291 (quoting *Resorts*, 372 F.3d at 161). This is so because it is well-settled that "the source of [a] bankruptcy court's subject matter jurisdiction is . . . [not] the express terms of the Plan" it "is 28 U.S.C. §§ 1334 and 157." *Resorts*, 372 F.3d at 161.

The Ninth Circuit Bankruptcy Appellate Panel applied this rule in *In re Global Inc.*, 2016 WL 6901265 (Bankr. 9th Cir. Nov. 22, 2016). There, "[t]he confirmed plan" reserved "any and all Causes of Action, . . . whether existing as of the Commencement Date or thereafter arising." *Id.* at *3. There, the BAP found that this provision could not create the requisite "close nexus" to confer post-confirmation jurisdiction because a provision effectively "reserving jurisdiction to the bankruptcy court to adjudicate [a] claim" is constitutionally unenforceable as a matter of law. *Id.* at *7. So too here.

### 2. Defendants' Pre-Confirmation Misconduct Is Irrelevant.

Defendants relatedly contend that a "close nexus" exists because their misconduct was committed pre-confirmation and such claims "formed part of the calculus of the parties when negotiation [sic] the Plan." (Opp. at 14:23-25.) But again, this is only true of a "plan that retains jurisdiction over a specific cause of action" because "[r]etention of jurisdiction *over a specific cause of action* suggests litigation of that action is critical to the plan's implementation." *In re*

---

sale documents (including, without limitation, any leases) entered into during these Chapter 11 Cases, including, but not limited to, enforcement of such agreements by the Debtors' Estates and/or breaches of any and/or all such agreements by the applicable non-Debtor parties (including, without limitation, the purchasers of the Debtors' assets under such agreements and any and all principals and/or guarantors of the obligations under or relating to such agreements);

(xii) against all claims against Integrity Healthcare, LLC and BlueMountain Capital Management LLC; and

(xiii) relating to the Operating Assets.

Dkt.1-1, Plan at p. 64-65, § 13.9(a).

*AmCad Holdings, LLC*, 2016 WL 3412289, at *2 (emphasis added) (citing *Resorts*, 372 F.3d at 167). A bankruptcy court does not have jurisdiction "to hear *pre-petition state law claims, pursued post-confirmation* by a liquidating trust" when "[t]he only nexus to th[e] bankruptcy case is that the plaintiff . . . is a liquidating trustee representing a group of creditors appointed pursuant to [a] confirmed plan of reorganization." *In re Insilco Tech., Inc.*, 330 B.R. at 523-24; (emphasis added); *accord e.g.*, *ML Servicing Co. Inc.*, 2011 WL 3320916 at *2 (applying *Pegasus* and *Resorts*, district court concluded that "related to" jurisdiction did not exist over post-confirmation malpractice and breach of fiduciary action based on pre-petition conduct).

In a similar vein, Defendants claim that federal subject matter jurisdiction exists because "the challenged conduct caused Verity to go into bankruptcy." (Opp. at 6:5-6 (emphasis omitted).) But this assertion likewise is without merit. "[I]t is a very common occurrence for defendants to file for bankruptcy after being sued" for misconduct, but this does *not* enable a "general practice by which lawsuits are removed and tried in bankruptcy court after a defendant does so." *Shoemaker v. Batesville Hosp. Mgmt., Inc.*, 2008 WL 294551, at *3 (N.D. Miss. Jan. 31, 2008). Accordingly, Defendants' assertion fails as a matter of law.

### 3. The Fact that a Verdict in Plaintiffs' Favor May Trigger Payment Under the Terms of the Plan Does Not Create a Close Nexus.

Lastly, Defendants assert that a "close nexus" exists because a verdict in Plaintiffs' favor will require Defendants "to make . . . payments and distributions to Holders of Allowed Claims, including Trust Beneficiaries." (Opp. at 15:15-16.) But this argument completely ignores the law. The 'close nexus' test is not satisfied simply because "recovery for actions pursued by [the plaintiff] [would be] placed in a Liquidation Fund and used to pay creditors under the Plan." *ML Servicing Co., Inc. v. Greenberg Traurig, LLP*, 2011 WL 3320916, at *2 (D. Ariz. Aug. 2, 2011). Instead, the Ninth Circuit has rejected the argument that "a judgment in favor of the plaintiffs in [a] state court action, if collected, could possibly reduce the amount of their claims against the bankruptcy estate . . . and thereby increase the dividend" or "could conceivably increase the recovery to the creditors" in anyway "creates post-confirmation 'related to' jurisdiction." *In re Int'l Mfg. Group, Inc.*, 574 B.R. 717, 720 (Bankr. E.D. Cal. 2017) (citing *Pegasus*, 394 F.3d at

1194 n.1). The Ninth Circuit rejected such an argument "as overbroad" because "'such a rationale could endlessly stretch a bankruptcy court's jurisdiction.'" *ML Servicing Co., Inc.*, 2011 WL 3320916, at *2 (quoting *Pegasus*, 394 F.3d at 1194 n.1). Cases recognizing this proscription are legion.[4] Moreover, the "[s]peculation that th[e] litigation might prompt [third parties to make claims affecting other creditors] does not establish a close nexus to the plan" because "[p]ost-confirmation jurisdiction does not exist simply because," as already explained, "an action conceivably might affect the recovery of other creditors." *Flashpoint Tech., Inc. v. Vivitar Corp.*, 2011 WL 13233544, at *4 (D. Conn. Oct. 20, 2011).

Seeking to avoid this black-letter law, Defendants assert that they "intend to argue that the terms of the Plan limit the hospitals that VHS Liquidating Trust can use as a basis for obtaining damages." (Opp. at 15:7-8.) At the outset, this argument is unavailing because a defendant's anticipated "defense cannot be a basis for removal." *Laird*, 2013 WL 4851620, at *6 (citing *Rivet*, 522 U.S. at 475). But even if this anticipated defense were relevant, Defendants' argument still fails because the "close nexus" test is not satisfied by the mere assertion that a judgment in the plaintiff's favor *may* require reading and applying the Plan. If this were sufficient, every case involving a confirmed plan would be removable because creditors can only be paid in accordance with the Plan's terms. Accordingly, to satisfy the *Resorts* test, jurisdiction only exists when the case necessarily would "*affect* the interpretation . . . of the confirmed plan." *Resorts*, 372 F.3d at 166 (emphasis added). This requires more than a mere showing that the Plan in some manner governs the distribution of funds. For example, the necessary *effects* are created when a suit would "fundamentally alter the administration of the Trust." *In re Swan Transp. Co.*, 596 B.R. 127, 133 (D. Del. Bankr. 2018). That prospect is not present here. Simply put, Defendants' reading violates the principles of federalism because it would permit Plan administrators to invoke federal

---

[4] *E.g.*, *Best Western Int'l Inc. v. Paradise Hospitality Inc.*, ,2014 WL 4209246, at *4 (D. Ariz. Aug. 26, 2014) ("The Ninth Circuit" has held that where a lawsuit "merely increases or decreases assets available for distribution under the plan, 'related to' jurisdiction does not exist."); *Meridian Funds*, 511 B.R. at 146 ("the Ninth Circuit is not persuaded by the argument that 'related to' jurisdiction" is created where "a claim, if successful, would increase the recovery to creditors"); *Int'l Mfg. Group, Inc.*, 574 B.R. at 720 (same); *ML Servicing Co., Inc.*, 2011 WL 3320916, at *2 (same).

jurisdiction in *any* post-confirmation case because such cases by definition always require distribution of assets in a manner consistent with the Plan. Such a reading is unconstitutional because it would "endlessly stretch a bankruptcy court's jurisdiction" in contravention of the Ninth Circuit's clear pronouncement in *Pegasus*. *See* 394 F.3d at 1194 n.1.

### C. State Courts Are Coequal to Federal Courts, and Plaintiffs' State Law Claims Are Not Mere Artful Reframing of Federal Law Claims.

Defendants assert that Plaintiffs raise inherently federal claims and the case was only filed in state court as "a result of Plaintiffs' artful pleading." (Opp. at 22:3-4.) This argument evidences a fundamental misunderstanding of the cornerstone principle of federalism. The Framers rejected any argument that "federal judicial power [enjoys] supremacy over State judicial power." *Cohens v. Virginia*, 19 (6 Wheat.) 264, 321 (1821). Rather, it is settled that state courts enjoy "equal dignity and authority with . . . district court[s] of the United States." *Hull v. Burr*, 234 U.S. 712, 719 (1914).

Moreover, the "artful pleading doctrine" only applies when a plaintiff, seeks to "avoid federal jurisdiction by omitting from the complaint allegations of federal law that are essential to the establishment of his claim." *Lippitt v. Raymond James Fin. Servs., Inc.*, 340 F.3d 1033, 1041 (9th Cir. 2003). A Plaintiff "has not artfully pleaded its way around federal jurisdiction" by filing a complaint alleging "state law claims" in state court. *Stanger v. Walker Land & Cattle, LLC*, 597 B.R. 916, 921 (D. Idaho 2019). For this reason, it is well settled that claims under California's Cartwright Act and Business & Professions Code section 17200 may "not be recharacterized as federal under the artful pleading doctrine." *Hendricks v. Dynergy Power Marketing, Inc.*, 160 F. Supp. 2d 1144, 1164 (S.D. Cal. 2001). It is beyond cavil that these claims are "authorized by [California's] law" and incorporate "no essential federal law." *Id.* at 1162, 1164. Thus, Defendants' suggestion that Plaintiffs engaged in mischief by seeking to vindicate their rights under California law in a California court is meritless and offends the foundational premises of the constitutional division of power between federal and state courts.

2854.003/1677258.1    15
Case: 21-04034    Doc# 108    Filed: 11/05/21    Entered: 11/05/21 16:51:10    Page 15 of 20

**D. The Factors Governing Equitable Remand Concern Whether the Case Ought To Be in *State* Court or the *Bankruptcy* Court, Not Whether the Case Ought To Be in *Any* Federal Court Rather than State Court.**

Defendants provide no authority in support of their effort to conflate the MDL with this bankruptcy court in evaluating the equitable remand factors applied to determine whether a case ought to be remanded pursuant to 28 U.S.C. § 1452(b). Instead, Defendants take the untenable position that all of the equitable factors set forth in *Hopkins v. Plant Insulation Co.*, 349 B.R. 805, 813 (N.D. Cal. 2006) and supplemented by *Maya, Ltd. Liab. Co. v. Cytodyn of N.M., Inc. (In re Cytodyn of N.M., Inc.)*, 374 B.R. 733 (Bankr. C.D. Cal. 2007), support Defendants' improper removal of the Superior Court Action. As set forth below, Defendants' unsupported and unsupportable positions should be disregarded.

With regard to the first factor—whether there would be an effect on the efficient administration of the bankruptcy estate—Defendants try to transform the question from how removal would effect ***the efficient administration of the bankruptcy estate*** (something that would occur in the Bankruptcy Court for the Central District of California) into what court "is the best situated to resolve Plaintiffs' claims efficiently" (Opp. 17:11), thereby attempting to substitute the MDL Court for the Bankruptcy Court in Defendants' analysis. Here, the Bankruptcy Court in Los Angeles administered the estate and created a liquidating trust, and then vested the liquidating trustee with the authority to liquidate the assets *without further order of the Bankruptcy Court*. Defendants contend that, instead, the administration—*which has already occurred*—should be effectively undone, the Superior Court Action removed, and then promptly transferred away from both the venue the liquidating trustee selected and the Bankruptcy Court. Notably, the cases Defendants cite arise in the context of motions to remand ***from an MDL***, not a motion to remand from a bankruptcy court.

With regard to the second factor, Defendants transform the question of whether state law issues predominate over bankruptcy issues into whether state law issues predominate over federal issues. That is not the proper analysis, and here there are no bankruptcy considerations because all the causes of action arise under state law.

With regard to the third factor, Defendants disregard the question of whether there is difficult or unsettled state law, and instead discuss the similarity of the Cartwright Act to the Sherman Act. Defendants ignore the separate and equal nature of state and federal law, stating that "[t]here are no state law specific issues in Plaintiffs' Complaint[;] [w]hile their ***primary*** claims ***are framed as*** state law antitrust claims," Defendants think they are federal Sherman Act claims. (*See* Opp. 18:15-17.) But *there are no federal claims for relief in the Superior Court Action.* There are only state court claims for relief. It is settled that "the Cartwright Act" and the "Sherman Act . . . are distinct" and California state courts have sometimes "rejected federal precedent in construing the Cartwright Act." *Tucker v. Apple Computer, Inc.*, 493 F. Supp. 2d 1090, 1102 (N.D. Cal. 2006). And more importantly, Defendants do not dispute that the law at issue is difficult. The Alameda County Superior Court's complex litigation department is certainly better equipped to preside over *California* Cartwright Act litigation—and to anticipate when it is appropriate to "reject[] federal precedent in construing the Cartwright Act"—than the bankruptcy court is.

With regard to the fourth factor (comity), Defendants claim that "Plaintiffs wrongly assert that this factor favors remand because '[t]he case at bar involves California claims between California-based parties.'" (Opp. 19:24-25.) Defendants then paradoxically proceed to argue that in fact there are California law claims (as well as other states' law claims) and California Defendants (as well as Defendants elsewhere). Moreover, Defendants do not contest that all of the Plaintiffs are California plaintiffs. Defendants then conclude "[t]his is anything but a case about 'California claims between California-based parties'" after showing that it ***is*** a case concerning California claims and California Plaintiffs and Defendants, even if not ***exclusively*** California claims and entities.

With regard to the fifth factor (relatedness or remoteness), the Superior Court Action is remote from the bankruptcy, not concerning the bankruptcy or bankruptcy law at all. The Superior Court Action is not any different than any other claim for relief under the Cartwright Act. Defendants wave their hands and argue that "Plaintiffs cannot credibly suggest the bankruptcy is remote to their claims . . . ." (Opp. 20:5-6.) The only relationship between the Superior Court Action and a bankruptcy is that, if successful, the judgment against Defendants would be

deposited in a liquidating trust governed by the terms of a liquidating trust agreement authorized by a confirmed bankruptcy Plan. The actual adjudication of the Superior Court Action does not concern bankruptcy whatsoever.

With regard to the sixth factor (jury trial), Plaintiffs have demanded a jury trial. This factor favors remand, without regard to Defendants' unsupported effort to contend that the MDL ought to be considered the current venue of the case before the matter is transferred.

With regard to the seventh factor (prejudice to parties and counsel), all Plaintiffs and their counsel are in California and would be prejudiced by Defendants' underhanded effort to move this litigation to Alabama. Indeed, the three "Prime" Plaintiffs were never debtors in this or any other bankruptcy court. Defendants ignore all of this, and instead simply argue that *the Defendants* would prefer to be in federal court. Defendants' characterization of this element would favor denying remand in every circumstance as in all removal cases someone removed it in order to prejudice plaintiffs' choice of forum, and someone wanted it removed. Plaintiffs would be severely prejudiced by being denied their chosen jurisdiction and venue and forced to litigate the dispute, presumably, in a federal court 2,323 miles away.

With regard to the eighth factor (other related proceedings), VHS Liquidating Trust is pursuing separate pieces of antitrust litigation in California state courts. Forcing VHS Liquidating Trust to litigate its cases—partly in California state court, and partly either in a federal bankruptcy court or an MDL in Alabama—would prejudice Plaintiffs. Plaintiffs chose California's courts for vitiation of its rights under the Cartwright Act in multiple pieces of litigation. Those cases should remain in California State Court. To do otherwise would squander the assets of the VHS Liquidating Trust; thus, undermining the efficient liquidation of trust assets.

With regard to the ninth factor, Defendants concede there is no other jurisdictional basis to remove the Superior Court Action to federal court.

With regard to the tenth and eleventh factors, Defendants concede that the matter removed is non-core, and that there are no bankruptcy issues to sever in the Superior Court Action. Defendants cite to *Cytodyn* to assert that these factors are not relevant due to the non-core nature of the case. But *Cytodyn* also holds that because the case there was non-core, the "(relatedness to

the main bankruptcy case) weighs in favor of remand." *In re Cytodyn of New Mexico, Inc.*, 374 B.R. 733, 740 (Bankr. C.D. Cal. 2007). In short, *Cytodyn* did what Defendants contend Plaintiffs "cannot credibly suggest," and found that a non-core proceeding is remote from the main bankruptcy.

With regard to the twelfth factor (relative burden), Defendants argue that the case should not be remanded from the Bankruptcy Court because the MDL litigation exists and, accordingly, even though this would burden the Bankruptcy Court's docket, here it would transfer to a different federal court. This case has not been transferred to the MDL. It would have a large impact on the Bankruptcy Court's docket if it remained in Bankruptcy Court. This factor accordingly favors remand.

With regard to the thirteenth factor (likelihood of forum shopping), Defendants assert that "Plaintiffs' Complaint was forum-shopping in and of itself" because Plaintiffs filed their California law case in a California court "precisely to try to avoid federal court jurisdiction." (Opp. at 23:1-3.) But the Constitution commands that "[t]here is a strong presumption in favor of the plaintiff's chosen forum." *Fabricant v. Elavon, Inc.*, 2021 WL 1593238, at *1 (C.D. Cal. Mar. 8, 2001). This is so because it is a hallmark tenet of Our Federalism[5] that absent cases involving complete diversity of citizenship, "state law claims belong in state court." *Black v. Monster Bev. Corp.*, 2016 WL 81474, at *4 (C.D. Cal. Jan. 7, 2016). Here, Defendants do not (and cannot) raise such claims. Respect for Our Federalism commands that federal courts "scrupulously confine their [removal] jurisdiction to the precise limits which [Congress] has defined." *Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100, 109 (1941). Indeed, "[n]othing is to be more jealously guarded by a court than its jurisdiction." *United States v. Ceja-Prado*, 333 F.3d 1046, 1051 (9th Cir. 2003). For this reason, "[t]he strong presumption against removal" applies to "'related to' jurisdiction" and requires that "the removing party bears the burden of establishing federal jurisdiction and that

---

[5] "Our Federalism" is the seminal mantra of the federal courts, which describes a "system in which there is sensitivity to the legitimate interests of both State and National Governments" and their courts, and in which every federal court "anxious though it may be to vindicate and protect federal rights and federal interests, always endeavors to do so in ways that will not unduly interfere with the legitimate activities of the States" and their courts. *Younger v. Harris*, 401 U.S. 37, 44 (1971).

2854.003/1677258.1 -19-
Case: 21-04034    Doc# 108    Filed: 11/05/21    Entered: 11/05/21 16:51:10    Page 19 of 20

removal was proper." *Fed. Home Loan Bank of Chicago v. Bank of Am.*, 448 B.R. 517, 523 (2011). For the reasons explained above, Defendants have fallen far short of satisfying their burden. Accordingly, Defendants' "forum shopping" accusation ignores black-letter principles of constitutional law.

With regard to the fourteenth factor (presence of non-debtors), Defendants inexplicably ignore the existence of the non-debtor "Prime" Plaintiffs that have been drawn into federal court merely by existing in the case alongside the VHS Liquidating Trust. The interests of the "Prime" entities can only favor remand, as it would return the lawsuit to the court chosen by them.

### III. CONCLUSION

Defendants make plain their intention to misuse the bankruptcy removal process in order to fabricate federal jurisdiction not for any of the purposes of bankruptcy law, but instead for their own goal to get a state court lawsuit into a federal MDL. This Court should remand this case back to Alameda County Superior Court where it began and where it belongs, and thereby "protect[] its own jurisdiction from misuse." *U.S. Realty & Imp. Co.*, 310 U.S. at 456.

DATED: November 5, 2021

BARTKO ZANKEL BUNZEL & MILLER
A Professional Law Corporation

By: ____/s/ Sean R. McTigue____
Sean R. McTigue
Attorneys for Plaintiffs VHS LIQUIDATING TRUST, PRIME HEALTHCARE SERVICES, INC., PRIME HEALTHCARE FOUNDATION, INC. and PRIME HEALTHCARE MANAGEMENT, INC.